HELENE N. WHITE, Circuit Judge,
dissenting.
I concur in Judge Rogers’s dissent. I write separately to express the view that the fair implication of the Fair Sentencing Act is that Congress intended that the Sentencing Commission determine whether and to what extent the newly enacted increased base-cocaine quantity thresholds for triggering mandatory minimum sentences would be applicable to defendants already under sentence. Further, allowing application of the new 18:1 ratio to all offenders already under sentence except those whose sentences under the new ratio would clash with the old 100.T ratio’s mandatory minimum sentences bears no ra *691 tional relation to any identified Congressional purpose.
I.
The majority dismisses the argument that Congress intended that the Commission determine to what extent the increased base-cocaine mandatory-minimum threshold should apply to offenders already under sentence, characterizing it as a “theory of springing retroactivity” that “raises serious constitutional doubts” because “[t]he constitutionality of the Sentencing Commission depends on the premise that Congress did not ‘vest in the [Commission] the legislative responsibility for establishing minimum and maximum penalties.’ ” Majority Op. at 654-55 (quoting Mistretta v. United States, 488 U.S. 861, 396, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989)). The majority does not explain why allowing the Commission to determine to what extent a change in penalty promulgated by Congress should be applied retroactively to the benefit of offenders already sentenced is an excessive delegation of legislative authority while allowing the Commission to determine the many aspects of sentencing confided to it under the Sentencing Reform Act of 1984 is not. I question whether had Congress expressly stated that in promulgating the “guidelines, policy statements, or amendments” mandated by Section 8 of the Fair Sentencing Act the Commission should address the extent to which the amended base-cocaine amounts for triggering the mandatory mínimums should be applied to resentencing proceedings under § 3582, the majority would declare the delegation unconstitutional, and on what basis.
The Sentencing Commission, created by Congress under the Sentencing Reform Act of 1984, consists of seven voting members appointed by the President with the advice and consent of the Senate, at least three being Federal judges selected from a list recommended by the Judicial Conference of the United States, and no more than four being of the same political party, all subject to removal by the President only for good cause, with the Attorney General, or his or her designee, serving as an additional ex officio non-voting member. See 28 U.S.C. § 991(a). In creating the Commission, Congress recognized the important role each branch of government must play in achieving effective, but fair, sentencing rules and practices. “Historically, federal sentencing — the function of determining the scope and extent of punishment — never has been thought to be assigned by the Constitution to the exclusive jurisdiction of any one of the three Branches of Government.” Mistretta, 488 U.S. at 364,109 S.Ct. 647.
The Commission has functions that can be regarded as being within the purview of all three branches of government. As explained in Mistretta:
In addition to the duty the Commission has to promulgate determinative-sentence guidelines, it is under an obligation periodically to “review and revise” the guidelines. [28 U.S.C.] § 994(o). It is to “consult with authorities on, and individual and institutional representatives of, various aspects of the Federal criminal justice system.” Ibid. It must report to Congress “any amendments of the guidelines.” § 994(p). It is to make recommendations to Congress whether the grades or maximum penalties should be modified. § 994(r). It must submit to Congress at least annually an analysis of the operation of the guidelines. § 994(w). It is to issue “general policy statements” regarding their application. § 994(a)(2). And it has the power to “establish general policies ... as are necessary to carry out the purposes” of the legislation, § 995(a)(1); to *692 “monitor the performance of probation officers” with respect to the guidelines, § 995(a)(9); to “devise and conduct periodic training programs of instruction in sentencing techniques for judicial and probation personnel” and others, § 995(a)(18); and to “perform such other functions as are required to permit Federal courts to meet their responsibilities” as to sentencing, § 995(a)(22).
.... Every year, with respect to each of more than 40,000 sentences, the federal courts must forward, and the Commission must review, the presentence report, the guideline worksheets, the tribunal’s sentencing statement, and any written plea agreement.
488 U.S. at 369-70,109 S.Ct. 647.
Congress gave the Commission detailed parameters and constraints and then confided to it the task of promulgating binding[1] guidelines and policy statements effectuating Congress’s intent. Within that delegation was the express authority to decide in “what circumstances and by what amount the sentences of prisoners serving terms of imprisonment” should be reduced when the Commission reduces the recommended guidelines term. 28 U.S.C. § 994(u). This authority is unusual in and of itself. The majority repeatedly invokes the paramount interest in the finality of sentences; yet, the scheme set up by Congress contemplates not only that finality is not sacrosanct, but that consideration whether a change should be available for application to offenders already under sentence should be a part of the very process of making changes, and the determination left to the Commission’s sound discretion.
The Commission has exercised its authority to make guidelines changes available for retroactive application on several occasions. When it has done so, it has engaged in the thoughtful holistic analysis contemplated by the Congressional delegation of authority. This general approach is set forth in the background comments to U.S.S.G. § 1B1.10:
Among the factors considered by the Commission in selecting the amendments included in subsection (c) [18 U.S.C. § 3582(c)(2)] were the purpose of the amendment, the magnitude of the change in the guideline range made by the amendment, and the difficulty of applying the amendment retroactively to determine an amended guideline range under subsection (b)(1).
The listing of an amendment in subsection (c) reflects policy determinations by the Commission that a reduced guideline range is sufficient to achieve the purposes of sentencing and that, in the sound discretion of the court, a reduction in the term of imprisonment may be appropriate for previously sentenced, qualified defendants. The authorization of such a discretionary reduction does not otherwise affect the lawfulness of a previously imposed sentence, does not authorize a reduction in any other component of the sentence, and does not entitle a defendant to a reduced term of imprisonment as a matter of right.
The Commission has not included in this policy statement amendments that generally reduce the maximum of the guideline range by less than six months. This criterion is in accord with the legislative history of 28 U.S.C. 994(u) (formerly section 994(t)), which states: “It should be noted that the Committee does not expect that the Commission will recommend adjusting existing sentences under *693 the provision when guidelines are simply refined in a way that might cause isolated instances of existing sentences falling above the old guidelines or when there is only a minor downward adjustment in the guidelines. The Committee does not believe the courts should be burdened with adjustments in these cases.” S. Rep. 225, 98th Cong., 1st Sess. 180 (1983), 1984 U.S.C.C.A.N. 3182, 3363.
U.S. Sentencing Guidelines Manual § 1B1.10 cmt. background (footnote omitted).
In the case of the instant amendment, promulgated at Congress’s direction pursuant to the Fair Sentencing Act,[2] the Commission carefully considered the purpose of the amendment (to restore fairness in Federal cocaine sentencing), the significant magnitude of the change (12,000 offenders eligible for a 23 percent sentence reduction), and the administrative burden (manageable, considering the comment and testimony received by the Commission regarding resentencing under the retroactive 2007 crack-cocaine amendment, which involved more prisoners than the instant amendment). Sentencing Guidelines for the United States Courts, 76 Fed.Reg. 41332-01, 41333-34 (July 13, 2011). This is exactly what Congress expected of the Commission.
Congress was deliberately silent regarding the retroactivity of the Fair Sentencing Act, not because it was relying on the general savings provision, but because it chose to leave that determination to the Commission. Congress gave the Commission the authority and responsibility to make this decision because it had already created a structure that placed the Commission in the best position to make the retroactive-application determination. In directing the Commission to promulgate the amendments and policy statements necessary to implement the Fair Sentencing Act, Congress included the responsibility to determine whether and to what extent the new provisions would apply to those already under sentence. I do not find in the majority opinion a satisfactory reason for concluding otherwise.
This is not to say that the creation of the Sentencing Commission included a blanket delegation of the authority to determine the effective date of all Congressional amendments concerning sentencing. It is simply an acknowledgment that Congress created a system in which the Commission is charged with making decisions regarding the retroactive application of guidelines changes and in which Congress might leave to the Commission the determination of the proper application of an amendment to offenders who have already been sentenced.
Consistent with this interpretation of the Sentencing Reform Act and the Fair Sentencing Act is that when Congress did not intend that the Commission have the authority to address the retroactive application of a change to the mandatory mini *694 mum sentence scheme, it made its intent clear. In the Violent Crime Control and Law Enforcement Act of 1994, Congress amended § 3553 by adding subsection (f) (now known as the “safety valve”), providing an exception to the mandatory minimums of the Controlled Substances Act and the Controlled Substances Import and Export Act for certain offenders. As in Section 8 of the Fair Sentencing Act, Congress directed the Commission to promulgate guidelines or amendments to carry out the purposes of the amendment. But Congress additionally did something it did not do in the Fair Sentencing Act; it provided an effective date:
(c) EFFECTIVE DATE AND APPLICATION — The amendment made by subsection (a) shall apply to all sentences imposed on or after the 10th day beginning after the date of enactment of this Act.
Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103-322, 108 Stat. 1796, § 80001(c). The majority explains this away by providing the “simpler explanation” that by default under the savings statute, the new safety valve would not have applied to those who offended before the statute’s effective date but were sentenced after, so “Congress had to provide that the safety valve ‘shall apply to all sentences imposed’ after the effective date.” Majority Op. at 655. The majority thus asserts that Congress had to use effective-date language in the Violent Crime Control and Law Enforcement Act — which language was omitted from the Fair Sentencing Act — so that the Violent Crime Control and Law Enforcement Act would be understood to have the precisely the same applicability to yet-to-be-sentenced offenders that the Fair Sentencing Act has without effective-date language. I reject this explanation and find it significant that in making the changes effected by the Fair Sentencing Act, Congress declined to provide an effective date as it had in the Violent Crime Control and Law Enforcement Act, thereby indicating its intent to rely on the Commission’s mandate to consider when guidelines amendments should apply retroactively.
One might retort that this turns the general savings statute on its head by requiring a clear implication that Congress did not intend retroactive application. But, as recognized in Dorsey v. United States, — U.S.-, 132 S.Ct. 2321, 183 L.Ed.2d 250 (2012), the Sentencing Reform Act sets forth a background context within which the Fair Sentencing Act must be evaluated. Had Congress added a reference to § 994(u) of the Sentencing Reform Act (see p. 71 supra) in its mandate to the Commission, so that section 8 directed the Commission to “promulgate guidelines, policy statements or amendments provided for in this Act as soon as possible and determine to what extent these guidelines, policy statements and amendments shall apply to prisoners serving terms of imprisonment,” would this constitute fair implication, or would the majority still insist that Congress intended that the new guidelines, but not the new minimum quantities on which they are based, be available for application to prisoners under sentence at the Commission’s discretion? Presumably this would not constitute fair implication in the majority’s view because the added language italicized above is implied in any event, given that it is already within the provisions of the Sentencing Reform Act.
It is the majority that turns the Fair Sentencing Act on its head by its rigid adherence to the general savings statute in the face of the Commission’s clear authority to establish the new guidelines based on the greater mandatory-minimum thresholds and to decide whether and to what *695 extent the new thresholds should be applied to prisoners under sentence.
The majority finds much significance in the Commission’s own statements, observing that the Commission itself has announced that Amendment 750 “only allows the guideline changes to be considered for retroactive application; it does not make any of the statutory changes in the Fair Sentencing Act of 2010 retroactive.” Majority Op. at 657. This observation is found in the “Reason for Amendment” section of the Commission’s “Notice of final action regarding amendment to Policy Statement 1B1.10” in the Federal Register. 76 Fed.Reg. at 41333. It is part of the Commission’s discussion of the first of the three factors considered in determining whether to apply an amendment retroactively — the purpose of the amendment— and comes after the following:
The purpose of Parts A and C of Amendment 750 was to account for the changes in the statutory penalties made by the Fair Sentencing Act of 2010, Public Law 111-220, 124 Stat. 2372, for offenses involving cocaine base (“crack cocaine”). See USSG App. C, Amend. 750 (Reason for Amendment). The Fair Sentencing Act of 2010 did not contain a provision making the statutory changes retroactive. The Act directed the Commission to promulgate guideline amendments implementing the Act. The guideline amendments implementing the Act have the effect of reducing the term of imprisonment recommended in the guidelines for certain defendants, and the Commission has a statutory duty to consider whether the resulting guideline amendments should be made available for retroactive application. See 28 U.S.C. 994(u) (“If the Commission reduces the term of imprisonment recommended in the guidelines * * * it shall specify in what circumstances and by what amount sentences of prisoners
* * * may be reduced.”). In carrying out its statutory duty to consider whether to give Amendment 750 retroactive effect, the Commission also considered the purpose of the underlying statutory changes made by the Act. Those statutory changes reflect congressional action consistent with the Commission’s long-held position that the then-existing statutory penalty structure for crack cocaine “significantly undermines the various congressional objectives set forth in the Sentencing Reform Act and elsewhere ” (see U.S.S.G. App. C, Amend. 706 (Reason for Amendment)). The Fair Sentencing Act of 2010 specified in its statutory text that its purpose was to “restore fairness to Federal cocaine sentencing” and provide “cocaine sentencing disparity reduction”. See 124 Stat. at 2372.
76 Fed.Reg. at 41333 (emphasis added).
This explanation for the amendment states clearly that the Commission determined that the guidelines amendment implementing the Fair Sentencing Act should be available for retroactive application through resentencing under § 3582. The cautionary remark relied on by the majority simply states that the inclusion of the amendments in the policy statement makes the guidelines changes available for retroactive application, but does not make the statutory changes retroactive. The statement is susceptible of more than one interpretation.
The majority reads it as a statement of recognition that the drug quantities triggering the mandatory minimum sentences of the Anti-Drug Abuse Act continue in effect and control the resentencing of offenders who were subject to those mandatory minimum sentences when initially sentenced, unaffected by the new guidelines promulgated and made available for *696 retroactive application by the Commission following enactment of the Fair Sentencing Act. The comment can also be understood, however, as a statement that the only resentencing contemplated by the Fair Sentencing Act is the limited resentencing allowed under § 3582, and that a full resentencing based upon a retroactive change in the law separate and apart from the guidelines change is not authorized. The difference between a § 3582 proceeding and a full resentencing is significant. Only the relevant guidelines amendments are considered in a § 3582 proceeding, whereas in a full resentencing all sentencing factors are considered anew; similarly, Booker does not apply in § 3582 proceedings. Dillon v. United States, 560 U.S. 817, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010). The distinction between a full re-sentencing and a § 3582 proceeding highlights the difference between Dorsey and the instant case as well. The defendants who received the benefit of Dorsey were held to be entitled to the retroactive application of the statute on direct appeal, meaning they were entitled to a full, initial sentencing governed by the provisions of the Fair Sentencing Act. In contrast, the Blewetts and others like them are eligible for only a limited resentencing under § 3582, wherein only the guidelines amendment is available for application by the court, subject to the policy statement.
The majority also finds it telling that the Commission has urged Congress to make the provisions of the Fair Sentencing Act retroactive. The Commission has done so in the face of numerous court decisions holding that trial courts have no authority to consider § 3582 motions based on the amended guidelines where the resulting sentence would be constrained by the former mandatory minimum quantity levels. The Commission’s position is simply a reflection of its acceptance of the courts’ decisions.
In any event, whatever the intended meaning of the Commission’s statement, it is clear that the Commission would allow the new mandatory mínimums to have retroactive application to the extent legally permissible. And, since Congress intended that the Commission decide to what extent the Fair Sentencing Act should be available for retroactive application through § 3582, the applicability of the new minimum levels is clear.
II.
I agree with the majority that, assuming Congress intended the general savings provision to preclude application of the new minimum levels to § 3582 resentenc-ing proceedings, no intentional discrimination can be inferred from the failure to make the new minimum levels retroactive.
However, I agree with my colleagues who would sustain a traditional rational-relation challenge. The majority rejects this challenge:
The Blewetts, joined by several of the dissents, add that Congress acted “irrationally” by failing to make the Fan-Sentencing Act fully retroactive. But the government has a strong interest in the finality of sentences, and the Fair Sentencing Act advances that interest. Ruling otherwise means forgetting Armour v. City of Indianapolis, which endorsed “the rationality of the distinction ... the law often makes between actions previously taken and those yet to come,” and forgetting Dillon v. United States, which was “aware of no constitutional requirement of retroactivity that entitles defendants sentenced to a term of imprisonment to the benefit of subsequent ... amendments.”
Majority Op. at 659 (citations omitted).
There is no question that the threshold for establishing irrationality is high and *697 the legislative justification necessary to defeat a rational-relation challenge is correspondingly low. But rationality is nevertheless required. In the normal case, it would seem that almost any line Congress might draw regarding the effective date of legislation would be rational; it would be hard to imagine a line that would lack any conceivable justification. But this is not the normal case because Congress did not draw a line; it allowed for the retroactive application to some offenders but, according to the majority, not others. It is the rare case where rationality is absent.
Had Congress determined that the Fair Sentencing Act’s new provisions should be applied only to offenses committed, or sentences imposed, after its passage, such a determination would be rational for the reasons stated by the majority — the government has a strong interest in the finality of sentences and there is no constitutional right to retroactive application of sentencing changes. But Congress did not so determine. Congress directed the Commission to promulgate the guidelines, policy statements, or amendments implementing the Fair Sentencing Act as soon as practicable. Fair Sentencing Act of 2010, Pub.L. 111-220, § 8, 124 Stat. 2372, 2374 (2010). And, although Congress did not direct that those changes be applied retroactively where the mandatory minimum is not involved, it left it to the Commission to decide. Once that door was opened, any interest in the finality of sentences was abandoned. All the considerations that enter into the decision to make the new mandatory minimum levels applicable only to future sentencing proceedings — whatever we may imagine those reasons to be granting Congress the benefit of all possible explanations — apply equally to the decision whether the new 18-1 ratio should permit resentencing where the mandatory minimum levels are not involved. Yet, Congress allowed resentenc-ing in the latter circumstance. We do not know if the 12,000 cases identified by the Commission include cases controlled by the old mandatory minimum levels, but it is inconceivable that the burden of resen-tencing, or the interest in sentencing finality, is impacted by the difference between applying the Fair Sentencing Act to permit resentencing under § 3582 only where the old mandatory minimum levels are not implicated and applying the Fair Sentencing Act to permit resentencing even where the old mandatory minimum levels are implicated.
Nor, as the majority suggests, does recognition that there is no rational basis to draw this line lead to the conclusion that the Equal Protection Clause has been violated by the denial of individual motions for resentencing for reasons other than that the former mandatory minimum thresholds still control. Denying the benefits of the Fair Sentencing Act to some offenders already under sentence, but not others, based on their personal characteristics and the specific facts of their offense is neither irrational nor unfair, and no more violates the Equal Protection Clause than imposing different sentences in the first instance.
Further, contrary to the majority’s objection, Dillon’s observation is not forgotten in this analysis. The Blewetts’s claim does not rest on an asserted constitutional right to the retroactive application of the Fair Sentencing Act. It rests on the irrationality of allowing its application to all sentences that have become final and are affected by the new guidelines except sentences based on the very mandatory minimum levels that the Fair Sentencing Act amended.[3] Congress did not intend this *698 irrationality, and that is why Judge Rogers is correct. Nevertheless, if Congress is understood to have the intent ascribed to it by the majority, that intent is irrational and violates the Equal Protection Clause absent rational justification other than finality.

. Until the Supreme Court's decision in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Sentencing Guidelines were binding on the sentencing court, except under narrow circumstances.

. The majority states:
All that could justify the Commission’s authority to make the new guidelines retroactive is its authority to fill the gap in the Fair Sentencing Act and to construe its own guidelines and policy statements. Let us assume for the sake of argument that the Commission indeed had such authority and thus permissively made the guidelines retroactive to individuals previously sentenced.
Majority Op. at 654. It is unclear to me whether this statement simply reflects the majority’s reluctance to accept that the Commission has the power to make guidelines retroactive, or serious doubt whether 28 U.S.C. § 994(u) gives the Commission the authority to make guidelines changes applicable to offenders previously sentenced. In any event, I think the authority is clear.

. In addition to the irrational results outlined by Judge Rogers, I note the following:
*698 Assuming a Criminal History Category of I and no aggravating factors or other adjustments to the Offense level, the application of the new guidelines without the Fair Sentencing Act's increased mandatory-minimum thresholds will result in the following:
A 60-month sentence is a within-guidelines sentence for crack quantities up to 27 grams, but a 60-month sentence continues to be the mandatory minimum sentence for quantities of 5 grams or more. Assuming all eligible offenders are resentenced to the minimum permissible term, all offenders with quantities from 5 grams to 27 grams will have 60-month sentences. Offenders with 4 grams are eligible for sentences as low as 21 months (21-27 month range.)
Under the new guidelines, a sentence as low as 121 months is a guidelines sentence for quantities up to 839 grams. A 120-month sentence is a within-guidelines sentence for amounts up to 279 grams. The new guidelines range for quantities from 28 grams to 111 grams is 63-78 months, but possession of 50 grams or more dictates a 120-month mandatory minimum under the old minimum levels. Thus, after resentencing, offenders with quantities from 50 grams through 111 grams will be serving 120-month sentences; offenders with up to 279 grams will also be eligible for 120-month sentences; offenders with up to 840 grams will be eligible for 121-month sentences; and offenders with 49 grams will be eligible for as little as 63 months.